UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DERRICK LAMAR BELL,**

      **Petitioner,**

                                                           Civil Action No. 05-CV-72128

                                                         HON. BERNARD A. FRIEDMAN

**v.**

**KURT JONES,**

      **Respondent.**

_____/

**<u>OPINION AND ORDER DENYING
PETITION FOR WRIT OF HABEAS CORPUS</u>**

**I. <u>Introduction</u>**

Petitioner, Derrick Lamar Bell, a state prisoner currently confined at Carson City Correctional Facility in Carson City, Michigan, has filed a petition for writ of habeas corpus through counsel pursuant to 28 U.S.C. § 2254 asserting that he is in custody in violation of his constitutional rights. Petitioner's present custodian is Blaine C. Lafler, but when he filed his petition, although he was still confined at Carson City Correctional Facility, his custodian at that time was Kurt Jones.

Petitioner was convicted of second degree murder, Mich. Comp. Law § 750.317, operating under the influence of liquor and causing death (OUIL), Mich. Comp. Law § 257.625(4), and operating with a suspended license and causing death (OWLS), Mich. Comp. Law § 257.904(4), on May 16, 2002 following a jury trial in Oakland County, Michigan circuit court. He was sentenced on June 5, 2002 to thirty-five to sixty years for the second degree murder conviction, twenty to thirty years for the OUIL offense and fifteen to thirty years for the OWLS conviction. Petitioner raises

claims regarding improper admission of evidence, prosecutorial misconduct, and ineffective assistance of counsel. Respondent has filed an answer to the petition asserting that the claims are procedurally defaulted, not cognizable or are without merit. The Court finds that the state appellate courts' decision in this case was not contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court. The petition therefore will be denied.

## II. Factual Background

The convictions in this case arise from a fatal two car accident which occurred on January 3, 2002 in Troy, Michigan, and resulted in the death of Tonya Anthony. It is undisputed that in the moments leading up to the fatal accident, Petitioner was intoxicated and driving at a high rate of speed in an erratic and aggressive manner for several miles on Interstate Highway 75. It is also undisputed that while driving in this matter, Petitioner "pulled from the left lane into the center lane, hitting the front driver's side of Anthony's SUV and causing both vehicles to flip off of the highway." *People v. Bell*, 2003 WL 22399290, *1 (Mich. App. Oct. 21, 2003). Ms. Anthony was ejected from her vehicle following the collision and suffered massive internal injuries and blood loss. Tr. II, 5/14/02, pp. 157-67. She was taken by ambulance to the hospital and was subsequently pronounced dead.

The point of contention at trial was whether Petitioner's actions rose to the level of murder or a form of manslaughter.

## III. Procedural History

Following Petitioner's conviction and sentencing, Petitioner filed a direct appeal in the Michigan Court of Appeals raising the three issues he presents in his habeas petition in this Court

plus two additional issues.[1] The court of appeals affirmed Petitioner's convictions on October 21, 2003. *People v. Bell,* 2003 WL 22399290 (Mich. App. Oct. 21, 2003). Petitioner then filed an application for leave to appeal in the Michigan Supreme Court raising the same five issues and the state supreme court denied leave to appeal in a standard order. *People v. Bell*, 470 Mich. 865; 680 N.W.2d 895 (May 28, 2004) (Table).

Petitioner thereafter filed his federal petition for writ of habeas corpus asserting the following three claims:

> I. THE TRIAL COURTS IMPROPER ADMISSION OF EVIDENCE REGARDING THE DECEDENT'S LIFE, FAMILY, AND DETAILED INFORMATION REGARDING HER INJURIES AND THE ADMISSION OF A VAST AMOUNT OF EVIDENCE REGARDING DEFENDANT BELL'S POST-OFFENSE CONDUCT, INCLUDING INFLAMMATORY RACIAL REMARKS, RENDERED MR. BELL'S TRIAL FUNDAMENTALLY UNFAIR. A WRIT OF HABEAS CORPUS MUST BE ISSUED.
>
> II. MR. BELL WAS DENIED A FAIR TRIAL BY THE PROSECUTOR'S MISCONDUCT. A WRIT OF HABEAS CORPUS MUST BE ISSUED.
>
> III. MR. BELL WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO OBJECT TO THE INTRODUCTION OF INADMISSIBLE, UNFAIRLY PREJUDICIAL EVIDENCE, FAILED TO RENEW HIS OBJECTION TO THE VIDEOTAPE WHEN IT APPEARED THE JUDGE WAS UNCOMFORTABLE WITH IT, AND FAILED TO OBJECT TO THE PROSECUTOR'S MISCONDUCT. A WRIT OF HABEAS CORPUS MUST BE ISSUED.

---

[1] In addition to the three constant issues that were raised in the Michigan Court of Appeals, the Michigan Supreme Court and in this Court, he argued: (1) there was insufficient evidence to support the existence of malice in Petitioner's conduct which led to the fatal accident; and (2) Petitioner was entitled to a full re-sentencing hearing.

Respondent has filed an answer to the petition asserting that the claims are either procedurally defaulted, fail to state a federal constitutional claim, or are without merit.

## IV. Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith,* 539 U.S. 510, 520 (2003).

> As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:
>
> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins,* 539 U.S. at 520-21 (quoting *Williams v. Taylor,* 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a

proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams,* 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law . . . Under § 2254(d)(1)'s "unreasonable application" clause, then a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly . Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also Davis v.Coyle,* 475 F.3d 761, 766 (6th Cir. 2007); *King v. Bobby,* 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell,* 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins,* 341 F.3d 507, 512 (6th Cir. 2003) (*en banc*).

## V. Discussion

### A. Procedural Default

The Court recognizes that Petitioner is in procedural default relative to the following issues: (1) whether the trial court improperly admitted evidence of Ms. Anthony's family life and her injuries; and (2) whether the prosecutor engaged in misconduct. *People v. Bell,* 2003 WL 22399290, at *5-6. In this case, the last state court to issue a reasoned opinion addressing Petitioner's admission of evidence and prosecutorial misconduct claims, held that the claims were not preserved for review because counsel failed to object to the admission of the subject evidence or to the prosecutor's conduct at trial.[2] *Id.* Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). The Court, however, need not address the procedural default issue here.

While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional. *Trest v. Cain,* 522 U.S. 87, 89 (1997); *Howard v.*

---

[2]Trial counsel did place an objection on the record regarding the prosecutor's admission of the videotape which revealed Petitioner's post-arrest conduct, but failed to place an objection on the record regarding any of the other conduct complained of on appeal.

*Bouchard,* 405 F.3d 459, 476 (6th Cir. 2005). Thus, while the procedural default issue would ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo,* 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); see also *Lambrix v. Singletary,* 520 U.S. 518, 524-25 (1997); *Ferensic v. Birkett,* 451 F. Supp.2d 874, 887 (E.D. Mich. 2006). The Court deems it more efficient in this case to proceed directly to the merits of Petitioner's claims.

### B. Admission of Evidence

Petitioner contends that the trial court erred in allowing the admission of evidence regarding Ms. Anthony's family life, her injuries, and Petitioner's post-arrest conduct. Specifically, relative to Ms. Anthony's family life, evidence was received about the fact that she was a thirty-three years old, a mother who was active in her children's lives, and an individual who worked two jobs in order to support her family. As to Ms. Anthony's injuries, due to the fact that her internal injuries were severe, Petitioner argues that the testimony that was allowed into evidence was graphic, cumulative, and prejudicial. Finally, with respect to Petitioner's post-arrest conduct, based upon the eyewitness testimony and videotape of Petitioner, it is undisputed that the evidence demonstrates that he was intoxicated, belligerent, verbally abusive, profane, made sexist and racist comments, and showed a reckless disregard relative to the accident and the death of Ms. Anthony.

Addressing the admission of evidence regarding Ms. Anthony's family life and her injuries, the state court of appeals determined that the trial court did not err in admitting the evidence. It held

as follows:

> Under MRE 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "Under this broad definition, evidence is admissible if it is helpful in throwing light on any material point." To the extent Anthony's mother's testimony established Anthony's identity as the accident victim, the testimony was relevant and admissible. While much of the remaining testimony Anthony's mother offered was arguably irrelevant, particularly that describing her reaction to hearing of Anthony's death and Anthony's relationships with her children, we do not believe that admission of this background information resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of the proceedings. We therefore conclude that reversal is not warranted on this ground.
>
> With respect to the testimony about Anthony's injuries, Bell argues that although death was an element of second-degree murder, neither the death itself nor the cause of death was disputed, and the descriptions of Anthony's injuries were therefore irrelevant. However, because Bell pleaded not guilty, all elements of the offense were in issue, and the prosecutor bore the burden of proving every element beyond a reasonable doubt regardless whether those elements were disputed. These elements included a death caused by an act of the defendant. The mere fact that the cause of death was undisputed does not, without more, render the evidence on that point inadmissible.
>
> While we agree that Anthony's cause of death could have been established through less graphic testimony than that which was presented here, we do not believe that the trial court abused its discretion in allowing it. First, the prosecutor was not required to use the least prejudicial evidence available to establish a fact at issue. Second, there is a narrow test for an abuse of discretion. We do not believe that this standard was met, particularly in light of the fact that testimony relating to a victim's cause of death, which is certainly admissible, is inherently unpleasant, and the trial court sua sponte admonished the prosecutor that the testimony by the medical examiner was becoming "too technical." Because Bell has not demonstrated that a clear error affecting his substantial rights occurred, reversal is not warranted.

*People v. Bell,* 2003 WL 22399290, at *5 (internal citations omitted).

With respect to the admission of evidence regarding Petitioner's post-arrest conduct, the state court of appeals determined that the trial court did err in admitting the videotape evidence, however,

the error was harmless. It held as follows:

> Bell next argues that his conviction must be reversed because evidence of his conduct after the accident would not have been admitted, particularly the videotape taken in the police car and his comment that he wanted to "do that white chick in the ass." We agree that admitting the evidence was error. Even accepting the dubious proposition that this evidence was relevant to show that Bell acted with reckless disregard for others' safety while driving, exposing the jury to a forty-five minute video of Bell "acting up" was unnecessarily cumulative, and any probative value in introducing the extensive testimony of Bell's offensive post-arrest conduct, particularly his comment to the nurse, was clearly outweighed by the danger of unfair prejudice.
>
> However, we will not reverse a conviction unless, "after an examination of the entire case, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice." Stated another way, we will not reverse on the basis of an error that was harmless or not prejudicial.
>
> * * *
>
> In this case, while the prejudicial evidence was admitted, our conclusion is driven as it must be, by the fact that the weight and strength of the untainted evidence was overwhelming. There was no question that Bell was heavily intoxicated and that the accident he caused resulted in Anthony's death. The only contested element of the second-degree murder charge was malice and, as we discuss in more detail below, testimony of the numerous eyewitnesses to his frightening driving behavior amply established this element. In sum, although admitting the evidence of Bell's post-arrest conduct was prejudicial, in light of the abundant and convincing untainted testimony, it was not likely to have affected the outcome of the trial. Therefore, we conclude that reversal is not warranted.

*Id.* at *6 (internal citations omitted).

"Habeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders,* 34 F.3d 352, 357 (6th Cir. 1994). The Sixth Circuit Court of Appeals has explained that:

> "[E]rrors in application of state law, especially rulings regarding the admission or exclusion of evidence are usually not to be questioned in a federal habeas corpus proceeding. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they

-9-

> "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana v. Egelhoff,* 518 U.S. 37, 43 (1996), quoting *Patterson v. New York,* 432 U.S. 197, 202 (1977); see also *Spencer v. Texas,* 385 U.S. 554, 563-64 (1967).

*Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000).

The Sixth Circuit has repeatedly held that only "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief." *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003).

Addressing the court of appeals' harmless error analysis regarding the admission of the videotape, a federal court can grant federal habeas relief only if the trial error had a "substantial and injurious effect" upon the jury's verdict, regardless of whether or not the state appellate court recognized the error and reviewed it under the harmless error analysis. *Fry v. Pliler,* 127 S. Ct. 2321, 2328 (2007) *citing Brecht v. Abrahamson,* 507 U.S. 619, 623 (1993). If "'the matter is so evenly balanced' that this Court has 'grave doubt' as to the harmlessness of the error, it 'should treat the error not as if it were harmless, but as if it affected the verdict (i.e., as if it had a 'substantial and injurious effect or influence in determining the jury's verdict')." *Stapleton v. Wolf,* 288 F.3d 863, 867 (6th Cir. 2002), *quoting O'Neal v. McAninch,* 513 U.S. 432, 435 (1994).

This Court concludes that the state court applied the harmless error review in a reasonable manner. After reviewing the record, this Court has little doubt as to the harmlessness of the evidentiary error and its concomitant impact on the constitutional error under the Due Process Clause. There was a plethora of other untainted eyewitness testimony presented regarding

Petitioner's reckless and erratic driving,[3] his post-arrest conduct,[4] his verbal abuse and belligerent behavior at the scene of the accident,[5] his intoxication,[6] and that he had an open alcoholic beverage in his car at the time of the accident.[7] This myriad of testimony against Petitioner alone is devastating to the defense. Therefore, the state court's conclusion that the error was harmless represents a reasonable application of Supreme Court precedent, and the Court cannot say that admission of the videotape had a substantial and injurious effect on the jury's verdict. Accordingly, Petitioner is not entitled to habeas relief on this ground.

**C. Prosecutorial Misconduct**

Petitioner claims that the prosecutor engaged in misconduct by introducing the above referenced videotape and by arousing the jury's sympathy for Ms. Anthony and her family during his opening statement, closing argument and rebuttal remarks. As previously stated, the prosecutor sought to personalize Ms. Anthony by raising facts regarding her life, her family, her friends, and her injuries. Tr. Vol. I at 166-67, 170-71; Tr. Vol. III at 102-03, 106-07, 111-112, 124-25, 142, 150, 155. The Michigan Court of Appeals rejected the videotape admission claim for the previously stated reasons. The state court of appeals further rejected Petitioner's jury sympathy claim as

---

[3] Alexander Bien, Constance Mitchell, Jerry Hammarlund, Wendy Parrino, and Oliver Romano.

[4] Officer Kirk Linton, Officer Peter Pizzorni, Police Aide Jacalyn Sherwin Wright and Officer Joseph Morgan.

[5] John Szymanek, Alexander Bien and Ronald Cousineau.

[6] Kimberly Dailey (forensic scientist and tested Petitioner's blood alcohol levels).

[7] Officer Charles Villerot (examined Petitioner's vehicle for evidence and retrieved an open beer bottle).

follows:

> While a prosecutor may not appeal to the sympathies and emotions of the jurors, the prosecutor was neither required to use the least prejudicial evidence available to establish a fact at issue, nor state the inferences arising from that evidence in the blandest possible terms.
>
> * * *
>
> While acknowledging that the appeals to the jury's sympathy were improper, the Court's review of the entire closing argument revealed that the prosecutor had also "asked the jury to examine all of the evidence and convict only if the evidence indicated defendant's guilty beyond a reasonable doubt." The trial court had instructed the jury not to allow sympathy to affect its judgment, and the Court concluded that the defendant therefore suffered no prejudice.
>
> * * *
>
> In this case, although the prosecutor's particular references to Anthony's injuries and her family relationships appear to have been tailored to arouse the jury's sympathy, our review of the prosecutor's comments, in their entirety, show that he did not ask the jury to suspend their judgment and decide the case on that basis. Rather, the prosecutor focused on the evidence of Bell's reckless driving and reminded the jury that their job was only to apply the law to the facts. The prosecutor also told the jurors he was not asking for their sympathy, but was asking them for justice, which he defined as an application of the law to the facts." Taken as a whole, we conclude that reversal is not warranted on this basis.

*People v. Bell,* 2003 WL 22399290, at *6-7 (internal citations omitted).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams,* 376 F.3d 520, 528 (6th Cir. 2004). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Caldwell v. Russell,* 181 F.3d 731, 736 (6th Cir. 1999).

The Court must focus on the "fairness of the trial, not the culpability of the prosecutor." *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997).

The first question to consider is whether the prosecutor's conduct or remarks during his opening, closing and rebuttal arguments were improper. See *Slagle v. Bagley,* 457 F.3d 501, 515-16 (6th Cir. 2006). If they were, the Court must consider whether the improper acts were so flagrant as to warrant reversal. *Id.* at 516. The Sixth Circuit has identified four factors to consider when analyzing conduct for flagrancy: "(1) whether the statements tended to mislead the jury or prejudice the defendant; (2) whether the statements were isolated or among a series of improper statements; (3) whether the statements were said deliberately or accidentally before the jury; and (4) the total strength of the evidence against the accused." *Millender v. Adams,* 376 F.3d 520, 528 (6th Cir. 2004) (internal quotations omitted).

"[T]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle,* 457 F.3d at 516, *quoting Donnelly v. De Christoforo,* 416 U.S. 637, 645 (1974). Such claims are also subject to the harmless error analysis of *Brecht, supra. Brecht,* 507 U.S. at 638; *see also Bates v. Bell,* 402 F.3d 635, 641 (6th Cir. 2005).

The Court agrees with the state court's findings that the prosecutor's comments may appear to have been stated to appeal to the sympathy of the jury, but when analyzed with the remainder of his argument and the strength of the prosecutor's case against Petitioner, the prosecutor's conduct does not rise to the level of misconduct. First, the prosecutor's argument was not likely to mislead the jury and his remarks were only marginally prejudicial. Ms. Anthony was killed as a result of Petitioner's reckless driving, and the prosecutor's action in familiarizing the jury with who Ms. Anthony was as a person, mother and productive citizen was not likely to change the

jury's understanding of Petitioner's conduct and the resulting crime. The prosecutor's remarks did appear to be part of a pattern and were deliberately placed before the jury. However, the weight of the evidence against the Petitioner was great, as set forth above; and the prosecutor's comments about Ms. Anthony's personal history added little to the case. Accordingly, Petitioner is not entitled to habeas relief on this ground.

### D. Ineffective Assistance of Counsel

Petitioner next asserts that he received ineffective assistance of trial counsel because his attorney failed to do the following: (1) renew his objection to the admission of the videotape; and (2) object to the above mentioned prosecutorial misconduct.

The Supreme Court has "emphasized that the Sixth Amendment right to counsel exists 'in order to protect the fundamental right to a fair trial." *Lockhart v. Fretwell,* 506 U.S. 364, 368 (1993), *quoting Strickland v. Washington,* 466 U.S.668, 687 (1984). "In *Strickland*, [the Court] identified the two components to any ineffective assistance claim: (1) deficient performance and (2) prejudice." *Id.* at 369; *see also Towns v. Smith,* 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the right to effective assistance of counsel, a petitioner must establish first that his attorney's performance was deficient "in that it fell below an objective standard of reasonableness." *Towns v. Smith,* 395 F.3d 251, 258 (6th Cir. 2005) (*quoting Strickland v. Washington,* 466 U.S. at 687). An attorney's performance is deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington,* 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

The petitioner also must demonstrate prejudice, that is, show that counsel's deficient performance may have altered the results of the trial. *Id.* An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The defendant must show "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

The state court of appeals further rejected Petitioner's ineffective assistance of counsel claim as follows:

> Even if counsel had been able to exclude all of the challenged evidence and prosecutorial comments, the abundant testimony relating to Bell's aggressive and reckless driving in the eight-mile stretch before the accident was ample for a reasonable jury to conclude that Bell acted "in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm," which is the state of mind necessary to establish second-degree murder.
> Bell also argues that, although counsel initially objected to admission of the videotape, he was ineffective for failing to renew the objection after it became clear that the trial court did not wish to present cumulative evidence regarding Bell's behavior. However, the following exchange reveals that the defense counsel's failure to object may have been a matter of trial strategy . . .
>
> \* \* \*
>
> Because we will not second-guess matter of trial strategy, we decline to find that counsel was ineffective for failing to renew his objection.

*People v. Bell,* 2003 WL 22399290, at *8-9 (internal citations omitted).

-15-

The Court agrees with the state court's disposition of this claim. Petitioner offers no argument on the merits which suggests that: (1) if an objection to the prosecutor's comments made during his opening, closing and rebuttal statements had been placed on the record; or (2) if an objection to the admission of the videotape had been renewed that the trial court would have sustained those objections and that it is reasonably probable that the case would have concluded in Petitioner's favor. In other words, Petitioner has failed to show any prejudice from trial counsel's failure to make the indicated objections. Petitioner argues that he is not required to show that trial counsel's errors more likely than not would have altered the outcome of the trial, but need only show that there is a reasonable probability that, but for counsel's unprofessional conduct, the trial court proceedings would have concluded differently. Even under the standard espoused by Petitioner and under *Strickland*, the fact remains that excluding the videotape and remarks made by the prosecutor, in excess of fourteen witnesses testified regarding various aspects of the circumstances leading up to Ms. Anthony's death (i.e., before, during and after the accident). Since the untainted testimony represents overwhelmingly substantive evidence of Petitioner's guilt, habeas relief is not warranted on this final claim of ineffective assistance of counsel.

## VI. Conclusion

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Petitioner is not in custody in violation of the Constitution of the laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [Doc. #1, filed May 31, 2005] is **DENIED.**

                                                      s/Bernard A. Friedman
                                                      BERNARD A. FRIEDMAN
                                                      CHIEF UNITED STATES DISTRICT JUDGE

Dated: May 12, 2008
       Detroit, Michigan

I hereby certify that a copy of the foregoing document
was served upon counsel of record by electronic and/or first-class mail.

s/Carol Mullins
Case Manager to Chief Judge Friedman